**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL SCULLEN,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL NO. 3:CV-16-0965** |
| **v.** | : | |
| | : | **(Judge Caputo)** |
| **LAURENCE MAHALLY,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

## I.    Introduction

This matter comes before the Court upon Mr. Scullen's Motion for Leave to File Supplemental Complaint (Doc. 13) and Motion for Appointment of Counsel (Doc. 15).  For the reasons that follow, Mr. Scullen's motions will be denied.

## II.    Background

On May 24, 2016, Mr. Scullen, an inmate at the Dallas State Correctional Institution (SCI-Dallas), in Dallas, Pennsylvania, initiated this action pursuant to 42 U.S.C. § 1983 concerning his environmental conditions of confinement in SCI-Dallas' Restricted Housing Unit (RHU) between August 14, 2015 and November 13, 2015.  (Doc. 1.)  Specifically, Mr. Scullen claims to have suffered from headaches, nausea, shortness of breath and sleeplessness due to the lack of adequate ventilation and excessive heat.  He named the following SCI-Dallas employees as defendants: Superintendent Mahally, Lt. Gavlick, Joseph Zakarauskas, Michael Goyne and Lori White.  He also names Dorina Varner, Chief Grievance Officer for the

Pennsylvania Department of Corrections (DOC), as a defendant.  On May 26, 2016, the Court directed the Clerk of Court pursuant to Fed. R. Civ. P. 4(c)(3)  to serve the Complaint and Waiver of Service of Summons forms on each defendant.  (Doc. 8.)

On June 18, 2016, Mr. Scullen filed a motion for leave to file a supplemental complaint and a "Supplemental Complaint".  *See* Docs. 12 and 13.  Mr. Scullen's Supplemental Complaint "deals only with events that have occured (sic) since the original compaint (sic) was filed" and seeks to add a defendant, Mr. Sowga, SCI-Dallas' Safety Manager.  (Doc. 12, ECF p. 2.)  The Supplemental Complaint is based on Mr. Scullen's present disciplinary stay in SCI-Dallas' RHU.  He was placed in the RHU on April 27, 2016, initially under administrative custody pending investigation.  He later received a misconduct and misconduct hearing concerning his involvement in the assault and attempted robbery of another inmate.  The Hearing Examiner found that Mr. Scullen had actively participated in the attempted robbery, was in possession of a weapon, and used that weapon stab the victim multiple times.  (Doc. 12, ECF p. 7.)  On May 17, 2016, Mr. Scullen received the disciplinary sanction of 180 days disciplinary custody for his involvement in these events.[1]  (*Id*.)

On May 24, 2016, Mr. Scullen experienced shortness of breath due to lack of proper ventilation and excessive heat in his RHU cell.  He was seen by medical staff on May 30, 2016, after signing up for sick call with complaints of heat induced headaches.  He was given ibuprofen.  On June 1, 2016, Mr. Scullen woke up disoriented due to dehydration and lost consciousness after falling in his cell while reaching for a glass of water.  Upon waking he

---

[1]  The Hearing Examiner noted this disciplinary sentence was to be calculated with the effective date of April 27, 2016, the day he was placed in administrative confinement in the RHU. (*Id*.)

discovered a bleeding gash over his right eyebrow.  Upon notifying staff of his injury he was "immediately" removed from his cell and taken to "the day room".  (*Id.*, ECF p. 3.)  A nurse arrived on the unit within five minutes.  (*Id.*)  His body temperature was 99.5 degrees at the time.  (*Id.*)  He was then taken to the infirmary and it was decided he would be transported to an outside hospital for further examination.  (*Id.*)  At the Wilkes-Barre General Hospital blood work was drawn, an EKG was taken, and Mr. Scullen received an MRI of his head.  (*Id.*)  His body temperature was recorded at 97.2 degrees.  Mr. Scullen "passed all test(sic), which again plaintiff asserts shows the only reason for him losing consciousness was due to extreme heat exposure. [He] was also hooked up to an i.v. for rehydration."  (*Id.*)  Upon his return to SCI-Dallas he was placed in an observation cell for 24 hours and then returned to his original RHU cell.  (*Id.*)

On June 1, 2016, a large fan was placed on each RHU range to supplement the existing smaller fans.  (*Id.*, ECF p. 11.)  After receiving numerous complaints from RHU inmates concerning the heat in the RHU, Mr. Sowga, the Safety Manger, discovered a belt in the ventilation unit was broken.  (*Id.*)  Maintenance was notified and the unit was repaired by the close of business the following day.  (*Id.*)

On June 4, 2016, Mr. Scullen asked Superintendent Mahally to remove the plexiglass on his cell door due to health and safety reasons.  His request was denied.  (*Id.*, ECF p. 10.)

On June 6, 2016, Defendant Zakarauskas, while touring the RHU, told Mr. Scullen to drop his lawsuit or he would rot in the RHU for a very long time.  (*Id.*)

### III.   Discussion

#### A.   Motion to Supplement the Complaint

The filing of an Amended Complaint is governed by Fed. R. Civ. P. 15(a):

> (1)  Amending as a Matter of Course.  A party may amend its pleading once as a matter of course within:
>
> (A)  21 days after serving it, or
>
> (B)  if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2) Other Amendments.  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a).  In this instance, as the Defendants have not yet filed a response to the Complaint, Mr. Scullen may amend his Complaint as a matter of right.  However, upon review of the proposed "supplemental complaint," the Court will deny Mr. Scullen's motion without prejudice.

The Court's initial reason for denying Mr. Scullen's request is that the proposed "Supplemental Complaint" is incomplete.  An "amended complaint must be complete in all respects.  It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992).  Mr. Scullen's proposed Supplemental Complaint "deals only with events that have occurred since the original compain (sic) was filed" and does not set forth the claims of the original complaint.  Consequently, were the Court to accept the Supplemental Complaint as

the Amended Complaint in this action, all causes of action alleged in the original complaint which are not alleged in the amended complaint would be deemed waived.

The Court has additional concerns with incorporating the allegations of the Supplemental Complaint into the present action.  Rule 18(a) of the Federal Rules of Civil Procedure governs the joinder of claims.  Rule 18(a) provides: "A party asserting a claim ... may join, as independent or alternative claims, as many claims as it has against an opposing party."  Fed. R. Civ. P. 18(a).  Rule 20 of the Federal Rules of Civil Procedure limits the joinder of defendants.  Rule 20(a)(2) provides:

> *Defendants*.   Persons ... may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2)(A) and (B).

Courts have broad discretion in applying Rule 20 to reduce inconvenience, delay, and added expense to the parties and to the court, and to promote judicial economy.  The policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit.  *See, e.g., Pruden v. SCI Camp Hill*, 252 F. App'x 436 (3d Cir. 2007); *George v. Smith*, 507 F.3d 605 (7th Cir. 2007).  Here, upon examination of the claims against the Defendants named in Mr. Scullen's original complaint, the court finds that while Rule 18 would permit him to add even unrelated claims against an existing defendant, Rule 20 does not allow him to amend his Complaint to include new, unrelated claims against new defendants as his

proposed amendment seeks to do.  Mr. Scullen's proposed new claims against Mr. Sowga do not arise out of the same "transaction, occurrence, or series of transactions or occurrences" as the claims asserted in the Complaint, nor is there a question of law or fact common to all Defendants.[2]  In short, Mr. Scullen cannot meet the requirements of Rule 20, and for this reason he will not be permitted to amend his Complaint in this fashion.[3]  Finally, the Court notes that some of the allegations of the Supplemental Complaint occurred within the past 20 days.  It is well-established that an inmate may not raise claims in federal court that have not been properly exhausted via available administrative procedures.  *See* 42 U.S.C. § 1997e; *Ross v. Blake*, 2016 WL 3128830, at *5 - 7 (Jun. 6, 2016).  The Court takes judicial notice of the DOC's Inmate Grievance System, DC-ADM 804,[4] which provides a formal three-step administrative review process for inmates to seek resolution of problems or other issues of concern arising during the courts of their confinement.  The DOC's grievance policy sets forth various submission and response times for the inmate and staff at each level of the process. Inmates must submit grievances within 15 working days after the event upon which the claim is based.  Once an inmate files a grievance, prison officials have 15 working days of the grievance being entered into the Automated Inmate Grievance Tracking System to provide a response.  The inmate then has 15 days of the receipt of the initial response to file an appeal with the Facility Manager.  The Facility Manager then has 15 working days to respond.  An

---

[2]  Two of the six original defendants are not involved in the allegations set forth in the Supplemental Complaint.  Likewise, the new defendant Mr. Scullen seeks to add (Mr. Sowga) is not mentioned in any of the allegations of the original Complaint.

[3]  Of course, this decision does not prevent Mr. Scullen from presenting his claims in a separate lawsuit.

[4]  A copy of this policy can be found at http://www.cor.pa.gov.

inmate must appeal the Facility Manager's decision to Final Review within 15 working days of their receipt of the Facility Manager's response.  The Secretary's Office of Inmate Grievances and Appeals (SOIGA) has 30 working days to file a response.  Presuming Mr. Scullen did file a timely grievance concerning the events contained in the Supplemental Complaint, the time frame for completing all three steps of the DOC's grievance process has not yet expired. Accordingly, Mr. Scullen will not be permitted to add unexhausted claims to his this action via a motion to supplement his complaint.  Mr. Scullen's motion to file a supplemental complaint will be denied.

### B.    Motion for Counsel

Simultaneous to the filing of his motion to supplement his Complaint, Mr. Scullen filed a motion for appointment of counsel based on his lack of legal education, RHU confinement and limited access to the RHU law library.  (Doc. 15.)  He also asserts that he suffers from mental health problems that make it difficult for him to concentrate on a single task for extended periods of time.  (*Id.*)

Although prisoners have no constitutional or statutory right to the appointment of counsel in a civil case, the Court has broad discretionary power to appoint counsel under 28 U.S.C. § 1915(e)(1); *see also Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993).

In its decision, the *Tabron* Court announced the factors to be considered by a district court when deciding whether to exercise its discretion and appoint counsel for an indigent litigant in a civil case.  Initially, "the district court must consider as a threshold the merits of the plaintiff's claim."  *Tabron*, 6 F.3d at 155.  Next, if a claim has arguable merit, "[t]he plaintiff's

ability to present his or her claim is, or course, a significant factor that must be considered in determining whether to appoint counsel." *Id*. at 156. "If it appears that an indigent plaintiff with a claim of arguable merit is incapable of presenting his or her own case ... and if such a plaintiff's claim is truly substantial, counsel should ordinarily be appointed." *Id*.

In addition to the indigent plaintiff's ability to present his or her case, *Tabron* requires the district court to consider the following additional factors: (1) the difficulty of the particular legal issues; (2) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (3) the plaintiff's capacity to retain counsel on his own behalf; (4) the extent to which a case is likely to turn on credibility determinations; and (5) whether the case will require testimony from expert witnesses. *Id. at* 155 - 57. However, while these factors are meant to guide the Court in making its determination, they are not exhaustive and the Court may consider any other factor it deems relevant. *Id*. at 157. Moreover, it is noted that appointment of counsel under § 1915(d) may be made by the court *sua sponte* at any point in the litigation. *Id*. at 156.

Finally, district "courts have no authority to compel counsel to represent an indigent civil litigant," *id*. at 157 n. 7, and courts are cautioned against the indiscriminate appointment of counsel in view of the limited supply of competent attorneys willing to accept such assignments. *Id.* at 157.

Applying the relevant *Tabron* factors in this case, the appointment of counsel is not warranted at this time. Initially, the Court notes that Mr. Scullen does not assert that he does not have access to the RHU law library. He claims he "is lucky if he can use the law library for more then (sic) 2 hours a week." (*Id.*) Likewise, he does not suggest he is legal incompetent,

incapable of clear thinking or the ability to communicate due to his mental health issues.  Mr. Scullen's advance notice to the Court that he may need additional time to complete tasks related to the defense of his lawsuit due to his limited access to the RHU law library and his mental health issues is appreciated but unnecessary at this moment.    Presently, as Defendants have yet to file an Answer or other response to the Complaint, Mr. Scullen is not faced with any briefing or other response deadlines he is in danger of missing due to his lack of access to the law library or time to formulate his response.    However, if in the future the need should arise that Mr. Scullen requires additional time to file a response or brief, he may always file a motion with the Court requesting the same.    To the extent Mr. Scullen's request for counsel is based on his lack of legal training or his state of incarceration, these facts do not warrant the appointment of counsel given this Court's liberal construction of *pro se* pleadings. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).    Additionally, the Court notes that to date Mr. Scullen's filings have been clear, well articulated and logical.    At this point in the litigation, there is no evidence that any prejudice will befall Mr. Scullen in the absence of court-appointed counsel.    Consequently, Mr. Scullen's request for counsel will be denied without prejudice.    Should future proceedings demonstrate the need for counsel, the matter may be reconsidered, either *sua sponte* or upon a motion properly filed.

An appropriate Order follows.

/s/ A. Richard Caputo
**A. RICHARD CAPUTO**
**United States District Judge**

**Date:  June 28, 2016**