**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL SCULLEN,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL NO. 3:16 -CV-0965** |
| **v.** | : | |
| | : | **(Judge Caputo)** |
| **LAWRENCE MAHALLY*, et al.,*** | : | |
| | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

**I.       Introduction**

Plaintiff Michael Scullen, an inmate formerly housed at the Dallas State Correctional

Institution (SCI-Dallas), in Dallas, Pennsylvania, brings this action pursuant to 42 U.S.C. §

1983.    Mr. Scullen asserts that the Defendants were deliberately indifferent to his

conditions of confinement in SCI-Dallas' Restricted Housing Unit (RHU) between August

14, 2015 and November 13, 2015.   (ECF No. 1.)   The Defendants move for summary

judgment (ECF No. 62) on Mr. Scullen's claims arguing that he failed to properly exhaust

his administrative remedies as required by the Prison Litigation Reform Act (PLRA) before

initiating this lawsuit; failed to allege the personal involvement of the named Defendants;

and failed to demonstrate that his conditions of confinement violated the Eighth

Amendment.

For the reasons that follow, the motion for summary judgment will be granted.

## II.   Summary Judgment Standard of Review

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law." *MacFarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 - 48, 106 S.Ct. 2505, 2509 - 10, 91 L.Ed.2d 202 (1986).

"A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (internal citations omitted).   Material facts are those that "might affect the outcome of the suit under the governing substantive law." *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006).   Where contradictory facts exist, the court may not make credibility determinations or weigh the evidence.   *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 - 51, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000) (internal quotation marks and citations omitted); *Paradisis v. Englewood Hosp. Med. Ctr.*, 680 F. App'x 131, 135 (3d Cir. 2017).   In reviewing a motion for summary judgment, the Court must view all facts and draw all reasonable inferences "in the light most favorable

to the party opposing the motion." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotation marks omitted).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Santini v. Fuentes*, 795 F.3d 410 (3d Cir. 2015) (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. 2553). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record ... or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) - (B). To withstand summary judgment, the non-moving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553 (citation omitted). The non-moving party "may not rest on speculation and conjecture in opposing a motion for summary judgment." *Ramara, Inc. V. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016). In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.    Statement of Undisputed Facts[1]

From the pleadings, declarations and exhibits submitted therewith, the following facts are ascertained as undisputed or, where disputed, reflect Mr. Scullen's version of the facts, pursuant to this Court's duty to view all facts and reasonable inferences in the light most favorable to the nonmoving party.  *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2510.  At all times relevant to this lawsuit Mr. Scullen was an inmate confined at SCI-Dallas.  The Pennsylvania Department of Corrections (DOC) has an Inmate Grievance system, DC-ADM 804, in place at SCI-Dallas.  Upon their arrival at SCI-Dallas, inmates received a copy of an Inmate Handbook containing this policy.  Mr. Scullen was familiar with the rules and requirements for filing grievances while housed at SCI-Dallas.

The DOC has a three-tiered grievance procedure.  *See* ECF No. 63-1, Shambaugh Decl., Att. 1, DC-ADM 804.  Pursuant to DC-ADM 804, inmates must first file a grievance with the Facility Grievance Coordinator at the facility where the events upon which the complaint is based occurred.  If dissatisfied with the initial review of his grievance, the inmate may appeal the decision to the Facility Manager (Superintendent).  Upon receiving a decision from the Superintendent, the inmate may file an appeal with the Secretary's Office of Inmate Grievances (SOIGA).

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  Pa. M.D. Local Rule 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issue of trial.  *See Id*.  Unless otherwise noted, the factual background herein derives from the Defendants' Rule 56.1 statement of material facts. (ECF No. 63.)  Mr. Scullen filed a brief in opposition to Defendants' motion; however, he did not file a response to Defendants' statement of material facts.  Instead, he filed his own statement of undisputed facts. (ECF No. 69.)  The Court accordingly deems the facts set forth by Defendants to be undisputed.  *See* Pa. M.D. Local Rule 56.1.

Pursuant to DC-ADM 804, an inmate grievance must, *inter alia,* include a statement of facts relevant to the claim and "[t]he inmate shall identify individuals directly involved in the event(s)." ECF No. 63-1, DC-ADM 804(A)(12)(b), p. 13. Mr. Scullen filed one grievance, No. 587850, relating to the allegations set forth in the Complaint. (*Id.*, p. 47, Grievance 587850.) He claims that from August 14, 2015 (the date he entered the RHU), until the date of grievance, September 18, 2015, his cell was excessively hot causing him to physically suffer from headaches, nausea, shortness of breath and dizziness. His RHU cell lacked air conditioning, fan, window or other cooling device at a time when the outside temperatures averaged between 85 and 95 degrees for over three weeks. Plaintiff claims that the vent on the back wall of his RHU cell "suck[ed] air out of the cell, taking what little oxygen [his] cell contain[ed]." (*Id.*) Mr. Scullen signed up for sick call twice during the relevant period in question. (ECF No. 63-2, Scullen Depo., p. 34.) Plaintiff received Motrin for his headaches and Antivert for his dizziness. The medication provided little relief for his symptoms. (*Id.*) Plaintiff failed to list any "actions taken and staff [he] contacted, before submitting [his] grievance." (ECF No. 63-1, p. 47, Grievance 587850.)

Lt. Gavlick provided the initial response to Plaintiff's grievance. (ECF No. 63-2, p. 53.) Lt. Gavlick advised Mr. Scullen that "[w]e do not adjust the temperature in the cell If it is hot outside it's going to be hot inside. Also, the air circulation was checked in the cells with a meter and they are above standards for the air flow." (*Id.*) Plaintiff filed an appeal to the Facility Manager alleging that the extreme heat was affecting his health and that since "new air" could not enter his cell, he was left "with low levels of oxygen." (*Id.*, p. 52.) On November 18, 2015, Superintendent Mahally upheld the initial response. (*Id.*, p. 51.) On December 30, 2015, Dorina Varner, the Chief Grievance Officer, upheld the institution's

denial of Plaintiff's grievance.  She also noted, *inter alia*, that as Mr. Scullen was "no longer housed in that cell; therefore, [his] concerns [were] of no consequence."  (*Id*., p. 50.)

## IV.     Discussion

### A.     Mr. Scullen's Procedural Default of his Claims against the Named Defendants

Under the Prison Litigation Reform Act (PLRA), a prisoner is required to pursue all available administrative remedies within the prison's grievance system before bringing a civil rights action concerning prison conditions in federal court.  *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, ____ U.S. ____, 136 S.Ct. 1850, 1855, 195 L.Ed.2d 117 (2016).  This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002).  Exhaustion is mandatory and must be "proper," which requires a prisoner to "us[e] all steps that the agency holds out, and [to do] so <u>properly</u> (so that the agency addresses the issues on the merits)."  *Woodford v. Ngo*, 548 U.S. 81 90, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006) (emphasis in original).  This means that the prisoner plaintiff must have completed "the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."  (*Id.*)  The "filing [of] an untimely or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's exhaustion requirement.  (*Id.*)  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA,

that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 923, 166 L.Ed.2d 798 (2007). Failure to comply substantially with the procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227 – 32 (3d Cir. 2004); *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 153 (3d Cir. 2016) "[P]risoners must complete the administrative review process in accordance with the applicable procedural rules, rules that are defined not by the PLRA, but by the prison grievance process itself.").

Applying this procedural default component to the exhaustion requirement, the Third Circuit Court of Appeals has held that:

> As for the failure to identify named defendants on the grievance form, … to the extent the identity of a defendant was "a fact relevant to the claim," Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on the grievance form. And, … in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA.

*Williams v. Pennsylvania Dep't. of Corr.*, 146 F. App'x 554, 557 (3d Cir. 2005). The reason for this is because "the purpose of the [grievance process] is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing. As such, the prison can excuse an inmate's failure to do so by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance." *Rosa-Diaz v. Dow*, 683 F. App'x 103, 105 – 06 (3d Cir. 2017) (inmate procedurally defaulted on claim where grievance policy required identification of defendants, and inmate failed to name particular defendant in grievance related to assault). An exception to the rule favoring full and proper exhaustion is if the actions of prison officials directly caused the inmate's procedural default

of a grievance. In such a case, the inmate will not be held to strict compliance of the exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000); *see also Brown v. Croak*, 312 F.3d 109, 110 (3d Cir. 2002). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. *Oliver v. Moore*, 145 F. App'x 731 (3d Cir. 2005) (failure to exhaust not excused if, after staff allegedly ceased efforts to impeded grievance, prisoner failed to follow through on grievance). Finally, the United States Supreme Court has held that "there is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones,* 549 U.S. at 212, 127 S.Ct. 910, 918 – 19, 166 L.Ed.2d 798 (2007).

Here, it is undisputed that Mr. Scullen's presented, and pursued, a grievance to final review that raised his RHU conditions of confinement claim but failed to identify any of the named Defendants. (ECF No. 63-2, p. 54.) Defendants argue Mr. Scullen's procedural default of his claims against all Defendants due to his failure to identify them as "individuals directly involved in the event(s)" as mandated by the DOC's grievance policy. *See* ECF No. 63-1, DC-ADM 804(A)(12)(b), p. 13. Mr. Scullen counters that prison officials denied his grievance on the merits and not because he failed to comply with the procedural requirement of naming "those directly involved in the event(s)," thereby waiving any claim of procedural default for failing to name any Defendants in his grievance. *See* ECF No. 68-3, Pl.'s Opp'n Br., p. 3. Defendants reply that because "Plaintiff did not put the DOC on notice of the persons he later intended to sue, his claims are now procedurally defaulted". (ECF No. 70, Defs.' Reply Br., p. 3.)

It is clear that the DOC's grievance procedures "supply the yardstick" to determine whether Mr. Scullen has procedurally defaulted his claims under the PLRA when he omitted naming any Defendant in his grievance. *Williams*, 482 F.3d at 639 (quoting *Spruill*, 372 F.3d at 231). However, contrary to Defendants' assertion, neither the DOC's grievance policy nor the PLRA requires a prisoner-plaintiff to name all of his perspective civil defendants in his prison administrative remedy. The United States Court of Appeals for the Third Circuit has repeatedly held that "[t]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he might be sued." *Id*. at 640 (quoting *Jones*, 549 U.S. at 219, 127 S.Ct. at 923); *see also Diaz v. Palakovich*, 448 F. App'x 211, 217 (3d Cir. 2011) (procedural default that may have resulted from failing to name prison officials in a fully exhausted grievance can be excused depending on the nature of the claim). Thus, Defendants' theory that a Pennsylvania inmate may not sue an individual not previously named in a grievance is incorrect.

The Third Circuit Court of Appeals has consistently held that a Pennsylvania inmate's obligation to identify specific persons in his grievance "is mandatory, or nearly so". *Spruill*, 372 F.3d at 234. The DOC's grievance policy requires "[t]he inmate *shall* identify individuals directly involved in the event(s)" in his grievance. (ECF No. 63-1, DC-ADM 804(A)(12)(b), p. 12) (emphasis added). Upon considering the DOC's DC-ADM 804, the Third Circuit Court has "determined that to the extent the identity of a defendant was 'a fact relevant to the claim,' Pennsylvania's prison grievance policy mandate[s] that the identification be included in the inmate's statement of facts on the grievance form." *Williams*, 146 F. App'x at 557 (quoting *Spruill*, 372 F.3d at 234). Additionally, where "practicable," a Pennsylvania inmate is required to identify persons he or she approached

informally in attempt to resolve the issue prior to filing grievance. *Spruill*, 372 F.3d at 234; *see also* ECF No. 63-1, DC-AMD 804(A)(4) ("[I]f an attempt was made to resolve the concern informally, this information should be included in Section B of the DC-804, Part 1."), p. 11; *see also* ECF 68-4, Grievance 587850, Section B ("List actions taken and staff you have contacted, before submitting this grievance.")  Thus, Mr. Scullen has procedurally defaulted his claims against the Defendants by failing to name them in his grievance only if they are "directly involved in the events," or if their identities were "facts relevant to the claim," or they were persons he approached to "resolve the matter informally" if practical. *See Spruill*, 372, F. 3d at 234.   "[I]f [the Defendants] d[o] not fall into any of these categories then [the prisoner-plaintiff is] not required to identify them at all."  *Robinson v. Johnson*, 343 F. App'x 778, 781 (3d Cir. 2009).

Applying the above standards, and a review of the evidence in the record, the Court does not find that the Defendants were individuals directly involved in the events (i.e. the regulation of Mr. Scullen's cell temperature or ventilation).  Similarly, the Defendants' names were not facts relevant to his grievance.  However, as admitted by Mr. Scullen in his Complaint and during his deposition testimony, Plaintiff attempted to resolve the matter of the temperature of his cell informally with Lt. Gavlick, Joseph Zakarauskas, Mike Goyne, and Lori White prior to filing his grievance.  *See* ECF No. 1, Compl. at ¶¶ 17 and 20; *see also* ECF No. 63-2, Scullen Depo, pp. 35 - 36 and 40 - 41.  As such, these Defendants fall within the category of individuals the Third Circuit Court of Appeals has found a Pennsylvania inmate, such as Mr. Scullen, is required to identify in his grievance.  His failure to do so results in the procedural default of his claims against them.

Next, the Court turns to Mr. Scullen's claims against Superintendent Mahally and Chief Grievance Coordinator Varner. The Circuit Court of Appeals has held that prison officials could excuse the procedural default of an inmate to identify those individuals who initially responded to his grievance, or denied a grievance appeal, of a fully exhausted grievance "by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance." *Diaz v. Palakovich*, 448 F. App'x 211, 217 (3d Cir. 2011). In *Diaz*, the Third Circuit Court of Appeals reversed the District Court's entry of summary judgment in favor of three supervisor defendants and determined that a fact finder could find that all three supervisors had contemporaneous knowledge of a pattern or practice of improper legal mail handling by subordinates due to their roles in the grievance process. In *Diaz,* the inmate-Plaintiff did not name the Grievance Coordinator and Superintendent in his fully exhausted grievance. However, both prison officials admitted their knowledge of prior legal mail handling violations when responding to the Plaintiff's grievance. *Diaz*, 448 F. App'x at 215. In the case at bar, the record establishes that Mr. Scullen filed a single grievance, Grievance 587850, during the relevant period. Mr. Scullen has failed to come forward with other information demonstrating either Superintendent Mahally's or Dorina Varner's alleged knowledge of a continuing violation of his conditions of confinement outside of their review of the single grievance. Thus, there is no evidence in the record from which a fact finder could find that the actions of Superintendent Mahally or Dorina Varner were "fairly within the compass" of Plaintiff's grievance. For these reasons, the Court will grant summary judgment in favor of all named Defendants.

### B.    Mr. Scullen's Conditions of Confinement Claim

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993). The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994).

The Eighth Amendment prohibits cruel and unusual punishment, which includes the unnecessary and wanton infliction of pain by prison officials. U.S. Const. amend. VIII; *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). However, not all deficiencies and inadequacies in prison conditions amount to a violation of an inmate's constitutional rights. *Rhodes v. Chapman*, 452 U.S. 337, 249, 101 S.C. 2392, 2400, 69 L.Ed.2d 59 (1981). Likewise, the Eighth Amendment does not mandate that prisons be free from discomfort. *See Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) ("[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.' ") (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)).

"A claim of inhumane prison conditions may rise to the level of an Eighth Amendment violation where the prison official 'deprived the prisoner of the minimal civilized measure of life's necessities' and 'acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to [his] future health."

*Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017) (quoting *Parkell v. Danberg*, 833 F.3d 313, 335 (3d Cir. 2016)). Accordingly, to properly raise a constitutional challenge to prison conditions, a prisoner must show that: (1) the deprivation alleged was objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977. "However, only 'extreme deprivations' are sufficient to present a claim for unconstitutional conditions of confinement." *Dockery v. Beard*, 509 F. App'x 107, 112 (3d Cir. 2013) (non-precedential) (*citing Hudson*, 503 U.S. at 8 - 9, 112 S.Ct. at 999 - 1000.)

In order to satisfy the first requirement, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977. "Such a showing requires 'more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to" the alleged unconstitutional risk. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 257 (3d Cir. 2010) (quoting *Helling*, 509 U.S. at 36, 113 S.Ct. at 2482). Plaintiff must also establish that "society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," i.e., "the risk of which he complains is not one that today's society chooses to tolerate." *Helling*, 509 U.S. at 36, 113 S.Ct. at 2482.

With regard to the second requirement, the Supreme Court has explained "deliberate indifference entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." *Farmer*, 511 U.S. at 835, 114 S.Ct. at 1978. The Supreme Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person

disregards a risk of harm of which he is aware." *Id.* at 836 - 37, 114 S.Ct. at 1978 - 79. In reviewing this type of claim, the courts have stressed the importance of the duration of the complainant's exposure to the alleged unconstitutional conditions, and a review of the "totality of the circumstances," and not just the allegedly egregious conditions themselves as critical. *Rhodes,* 452 U.S. at 362-33, 101 S.Ct. at 2407; *see also Tillery v. Owens*, 907 F.2d 418, 426–27 (3d Cir. 1990). In addition, if a prisoner is receiving physician attention, "a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill*, 372 F.3d at 236.

In the instant case, Mr. Scullen alleges that the Defendants subjected him to cruel and unusual punishment by exposing him to an excessively hot RHU cell with little ventilation to replenish the oxygen that was "suck[ed] out" of his cell by a vent in the rear of his cell. Plaintiff alleges the excessive temperatures in his RHU cell during the relevant period caused him to sweat continuously, feel nauseated, dizzy and short of breath, as well as suffer from continuous headaches. (ECF No. 63-1, Grievance 587850.) During this time he notes outside temperatures were "on average 85 to 95 degrees". (*Id*.) On the two occasions he signed up for sick call, medical staff saw Plaintiff in his RHU cell and prescribed him Motrin for his headaches and Antivert for the nausea and dizziness. (ECF No. 63-2, Scullen Depo, p. 34.) Each time that Mr. Scullen requested sick call, medical staff attended to him. He does not allege that corrections or medical staff interfered with or denied his access to medical care. Although Plaintiff states the prescribed medication did little to assist him, it was his choice not to seek further medical attention for his continued discomfort for monetary reasons. (*Id*., pp. 34 – 35.) Mr. Scullen provides no evidence to suggest he suffered from heat rash, heat stroke, or other heat related ailments during the

period relevant to this action. Likewise, he provides no evidence, other than his own subjective observations, that his RHU cell was double or triple the outside temperature during this time. In addition, he offers no evidence or testimony to contradict Lt. Gavlick's grievance response that "the air circulation was checked in the cells with a meter and they are above standards for the air flow." (ECF No. 63-1, p. 46.)

Even viewing Plaintiff's evidence in the light most favorable to him, a reasonable fact finder could not conclude that he suffered an Eighth Amendment violation due to his conditions of confinement in his RHU cell. There is no evidence in the record that Plaintiff suffered from a significant medical condition due to his conditions of confinement in the RHU. If Mr. Scullen was dissatisfied with his medical care, if the medical care was ineffective to address continued or worsening discomfort, he needed to seek additional medical attention. Because Plaintiff received medical attention, and he continued to have access to medical care during his RHU confinement, the Defendants who are non-medical providers, could not have been deliberately indifferent to a serious risk to his health due to the temperature or lack of proper ventilation in his cell. *Spruill*, 372 F.3d at 236. Based on the above, the Court will grant summary judgment on Plaintiff's Eighth Amendment excessive heat and inadequate ventilation claims in favor of Defendants.

**V.    Conclusion**

Based upon the evidence, the Court finds that Mr. Scullen has procedurally defaulted his claims against the named Defendants.  Alternatively, Mr. Scullen has failed to demonstrate that his conditions of confinement in his RHU cell violated the Eighth Amendment.

An appropriate order will follow.


**Date:  March 15, 2018**                          /s/ A. Richard Caputo
                                                                       **A. RICHARD CAPUTO**
                                                                       **United States District Judge**